OPINION OF THE COURT
Sandra J. Feuerstein, J.
Motion by the defendants for, inter alia, partial summary judgment and the cross motion by the plaintiffs for a stay of decision pending completion of depositions are determined as hereinafter provided.
On March 17, 1993, Stephanie Mantis, a 25-year-old competent, quadriplegic adult with cerebral palsy, was enrolled in an Adult Day Treatment Program operated by defendant, United *779 Cerebral Palsy Association of Nassau County, Inc. (UCP). On that date she reported to UCP employees that her mother had hit her and that she did not wish to return home. An examination of Stephanie’s legs by a nurse revealed bruises consistent with her statement. UCP, following its mandated procedures, reported Stephanie’s allegations to the New York State Office of Mental Retardation and Developmental Disabilities (OMRDD) and Adult Protective Services (APS).
Both agencies advised UCP that Stephanie should not return home that day and authorized UCP to provide her with overnight lodging at a residential facility operated by UCP in Bayville, New York. Stephanie’s mother, plaintiff Elizabeth Mantis, was informed of the allegations and Stephanie was transferred to UCP Bayville. The next day, after speaking to her mother, Stephanie asked to return home. She was transported back to UCP and then returned home. Three weeks later Stephanie resumed attendance at UCP’s Adult Day Treatment Program.
Elizabeth Mantis claimed that UCP had fabricated the allegations in order to fill a vacant bed at UCP Bayville. Mrs. Mantis demanded and obtained an investigation of the entire incident. OMRDD conducted an investigation during which Stephanie recanted her allegations. Nevertheless, OMRDD found that "UCP acted in the best interest of Stephanie Mantis in respiting the client after she was abused by her mother and that at no time were Stephanie’s rights violated.”
Not satisfied with this conclusion, Mrs. Mantis demanded a further comprehensive investigation which was conducted by Nicholas Constantino, the Director of OMRDD’s Office of Internal Affairs (OIA) in Albany.
On March 1, 1994, before OIA concluded its investigation, Stephanie Mantis advised the UCP staff that her mother had hit her again and she did not wish to return home. UCP contacted Mr. Constantino who authorized UCP to videotape a statement from Stephanie with OMRDD representatives present. In the videotaped interview, Stephanie repeated her allegations that her mother had hit her that day and that she did not wish to return home. Stephanie also stated that her mother had hit her in March 1993 and that her mother had pressured her into recanting her statement.
Based upon her statement, OMRDD agreed to provide Stephanie with respite at an OMRDD facility in Melville.
On March 14, 1994 UCP was served with the summons and complaint in this action. The complaint asserts causes of ac *780 tion for intentional infliction of emotional distress, defamation and false imprisonment relating to the March 17, 1993 incident. A fourth cause of action relates to an unrelated incident in which it is alleged that UCP employees "dropped” Stephanie while changing her.
On April 18, 1994, OMRDD/OIA issued its report which found that UCP’s handling of t'he March 1993 incident was proper and that UCP did not bill or receive reimbursement for the respite it provided for Stephanie in UCP Bayville. In fact, it is undisputed that the only reason the bed was available was because a patient had been recently transferred to a local hospital.
Counsel for UCP requested on four separate occasions that the attorneys for the plaintiffs voluntarily discontinue the action. Plaintiffs’ counsel refused.
Accordingly, UCP now moves for partial summary judgment dismissing the defamation, false imprisonment and intentional infliction of emotional distress causes of action based upon UCP’s immunity from civil liability pursuant to Social Services Law § 473-b and based upon the legal insufficiency of the claims asserted.
The plaintiffs cross-move for a stay of decision pending completion of depositions.
Section 473-b of the Social Services Law, entitled "Reporting of endangered adults; persons in need of protective services”, provides in pertinent part:
"Any person who in good faith believes that a person eighteen years of age or older may be an endangered adult or in need of protective or other services, pursuant to this article, and who, based on such belief either:
"(a) reports or refers such person to * * * any local social services district office * * * or any other person, agency or organization that such person, in good faith, believes will take appropriate action;
"(b) * * * shall have immunity from any civil liability that might otherwise result by reason of the act of making such report or referral.”
While there are no reported cases applying section 473-b to shield a reporting agency from civil liability, the plain language of the statute, the legislative intent of the statute and analogous case law support the conclusion that Social Services Law § 473-b bars the plaintiffs’ present claims of defamation, false imprisonment and intentional infliction of emotional
*781 distress (see, Assembly Mem in support of L 1984, ch 523, § 1, adding Social Services Law § 473-b; Dagan v Brookdale Hosp. Med. Ctr., 202 AD2d 385 [hospital workers held to be immune from liability for reporting suspicion of child abuse based upon Social Services Law § 419]; Isabelle V. v City of New York, 150 AD2d 312 [same]).
Here, in applying Social Services Law § 473-b, UCP has amply demonstrated its good faith in reporting allegations of abuse of Stephanie by her mother. Indeed, upon reporting the March 17, 1993 incident to OMRDD, UCP was instructed by OMRDD to provide overnight respite to Stephanie.
In opposition, the plaintiffs have submitted no evidence, in admissible form, establishing a triable issue of fact with regard to any bad faith by UCP.
Accordingly, the defendant’s motion for partial summary judgment dismissing the first, second and third causes of action alleging a defamation, false imprisonment and intentional infliction of emotional distress is granted.
The court notes that even if section 473-b was not applicable, the above causes of action would be dismissed based upon legal insufficiency and the defendant’s qualified privilege (see, CPLR 3016 [a]; Howell v New York Post Co., 81 NY2d 115; Liberman v Gelstein, 80 NY2d 429; Broughton v State of New York, 37 NY2d 451; Dunajewski v Bellmore-Merrick Cent. High School Dist., 138 AD2d 557). Specifically, the plaintiffs have not submitted any evidence of malice which would defeat the defendant’s qualified privilege on the defamation claim (see, Dunajewski v Bellmore-Merrick Cent. High School Dist., supra). On the intentional infliction of emotional distress claim, there is no evidence of extreme or outrageous conduct by the defendant to support such a claim (see, Howell v New York Post Co., supra). Additionally, the plaintiffs have not submitted an affidavit of a physician attesting to any injury caused by the defendant’s actions. With regard to the false imprisonment claim, the plaintiffs have not submitted any evidence to defeat the defendant’s qualified privilege or to support their contention that Stephanie did not consent to the confinement (see, Broughton v State of New York, supra). Moreover, conspicuous by its absence is an affidavit from Stephanie Mantis, a named plaintiff, supporting the allegations made in the complaint. Indeed, the court is concerned that Stephanie may not be a willing plaintiff in this action and counsel for the plaintiffs is advised to review this case carefully with their clients before proceeding any further.
*782 The plaintiffs’ cross motion for a stay of decision pending depositions is denied. The plaintiffs’ mere hope or speculation that something will be uncovered during discovery is not a sufficient basis to postpone a decision on a summary judgment motion (see, Billy v Consolidated Mach. Tool Corp., 51 NY2d 152; Wood v Otherson, 210 AD2d 473; Kennerly v Campbell Chain Co., 133 AD2d 669).
Finally, UCP’s request for the imposition of sanctions and attorney’s fees against plaintiff, Elizabeth Mantis, and her attorneys pursuant to CPLR 8303-a is granted to the extent that the plaintiffs and their attorneys are each directed to pay to UCP $500 each per cause of action, totaling $3,000, upon the resolution of the final and sole remaining cause of action. Specifically, the court finds that the continuation of the first three causes of action, despite four requests by UCP to discontinue, was in bad faith without any reasonable basis in law or fact and could not be supported by a good-faith argument for extension, modification or reversal of existing law.